**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**EASTER COMMON HAIMUR AND**                                    **PLAINTIFFS**
**HASUM HAIMUR**

**V.**                                                          **CAUSE NO. 3:20-CV-483-CWR-FKB**

**ALLSTATE PROPERTY AND**                                       **DEFENDANTS**
**CASUALTY INSURANCE COMPANY**

**ORDER**

Before the Court is the defendant Allstate Property and Casualty Insurance Company ("Allstate")'s motion to exclude. Docket No. 96. The matter is fully briefed and ready for adjudication.

**I.      Factual and Procedural History**

The facts of this case are well-known to the parties. For the purposes of the present motion, a brief recitation of the relevant factual and procedural history will suffice.

On June 4, 2019, a fire occurred at the plaintiffs' residence, which caused damage to the house and its contents. The plaintiffs had an insurance contract with Allstate in effect at the time of the fire that insured the plaintiff's personal property and house. As a result of the fire, the plaintiffs were unable to reside in their house, suffered damage to their personal property within the house at the time of the fire, and have incurred and continued to incur additional living expenses. That same day, plaintiff Easter Common Haimur filed an insurance claim with Allstate for the Haimurs' losses.

A claim history submitted by Allstate indicates that the insurer began processing the Haimurs' claim on June 4, 2019. *See* Docket No. 92-13. Under the coverage for additional protections, Allstate paid for the Haimurs to rent a home and furniture in Madison County,

Mississippi, for $2,000 and $1,200 per month, respectively. It required that the plaintiffs provide documentation related to the loss, including but not limited to cell phone records and bank statements. The plaintiffs claim that they fully cooperated with Allstate's Special Investigative Unit ("SIU") Investigator, Wilbur Jordan, and provided the requested information. The plaintiffs repeatedly followed up with Allstate to determine when Allstate would complete the investigation and pay their insurance claim. In September 2019, Jordan told the plaintiffs that he was finishing his investigation.

On March 17, 2020, Allstate retained counsel and requested that the plaintiffs provide additional documentation and sit for examinations under oath regarding the fire and associated damage. Allstate received a Fire Origin & Cause Report prepared by Jeremy Tolbert, an employee of an outside firm, on March 27, 2020. Docket Nos. 92-11 and 107-15. Tolbert found that "[p]hysical evidence established separate points of fire origin," and that "[t]here were no competent ignition sources that could explain the ignition in multiple areas other than an intentionally applied open flame device." Docket No. 92-11 at 2. On these bases, Tolbert concluded that "[t]he classification of the fire is incendiary." *Id.*

On June 25, 2020, Allstate sent the plaintiffs a letter stating that Allstate decided to deny their claim. The plaintiffs then filed this lawsuit on July 27, 2020. Docket No. 1.

Allstate filed a motion to dismiss on August 31, 2020. Docket No. 6. After extending the plaintiffs' time to respond, the Court granted in part and denied in part the motion on August 26, 2021. Docket No. 31. More specifically, it dismissed only the plaintiffs' respondeat superior and vicarious liability claims. *Id.* at 9.

Discovery closed on November 15, 2021. The parties thereafter filed cross-motions for summary judgment and partial summary judgment. *See* Docket Nos. 92 and 94. On April 20, 2022,

2

the Court denied these motions.[1] Docket No. 124. At that time, the Court did not rule on Allstate's

motion to exclude the plaintiffs' expert, Andrew Dyess, at that time.

The Court will now rule on Allstate's motion to exclude testimony by Dyess, a public

adjuster, from trial. Docket No. 96. Dyess visited the Haimurs' residence on April 20, 2021. Based

on his on-site review of the property damage, as well as documents provided by Allstate and the

plaintiffs, Dyess prepared an expert report in which he found the Haimurs entitled to a total claim

of $487,145.27. Docket No. 98-6 at 7. Since Allstate's payments to the Haimurs at this point totaled

only $152,851.14, Dyess concluded that "Allstate's payments are defective by a total of

$334,294.13." *Id.*

As detailed below, Allstate objects to admission of Dyess' testimony at trial because, they

allege, he lacks the qualifications of an expert and his testimony is unreliable. The plaintiffs oppose

this motion. Docket No. 105. They argue, in sum, that Allstate's contentions concern the

appropriate weight of Dyess' testimony, not its admissibility.

The Court considers each side's arguments below.

## II.     Legal Standard

Under Rule 702 of the Federal Rules of Evidence:

A witness who is qualified as an expert by knowledge, skill, experience, training,
or education may testify in the form of an opinion or otherwise if:
>       (a) the expert's scientific, technical, or other specialized knowledge will
>       help the trier of fact to understand the evidence or to determine a fact in
>       issue;
>       (b) the testimony is based on sufficient facts or data;
>       (c) the testimony is the product of reliable principles and methods; and
>       (d) the expert has reliably applied the principles and methods to the facts of
>       the case.

---

[1] Allstate filed a motion for reconsideration on May 18, 2022. Docket No. 124. Briefing on that matter has not yet
concluded; therefore, the issue is not yet ripe for adjudication.

Fed. R. Evid. 702.

"The inquiry envisioned by Rule 702 . . . is a flexible one. Its overarching subject is the scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594-95 (1993). Expert testimony must also aid the factfinder in evaluating the evidence. Thus, "[t]he overarching goal of *Daubert*'s gate-keeping requirement . . . 'is to ensure the reliability and relevancy of expert testimony.'" *Black v. Food Lion, Inc.*, 171 F.3d 308, 311 (5th Cir. 1999) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). "The expert testimony must be relevant, not simply in the sense that all testimony must be relevant, Fed. R. Evid. 402, but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Services, Inc.*, 320 F.3d 581, 584 (5th Cir. 2003) (citing *Daubert*, 509 U.S. at 591-92).

### III.   Discussion

Allstate raises several objections to Dyess' testimony. The defendant first contends that Dyess' "opinions on the plaintiffs' contents claim are unreliable and demonstrate no specialized knowledge which was required to reach his ultimate conclusions." Docket No. 97 at 3.[2] Allstate next seeks to exclude Dyess because "he relies only on his years of experience in the insurance field for the basis of his opinion," rather than conducting independent "test cleaning or mold testing." *Id.* Finally, Allstate urges that Dyess impermissibly "opine[d] on contractual language"

---

[2] On this point, Allstate emphasizes that in valuing the plaintiffs' contents claim, Dyess did not state in his report "how he arrived at that value; rather [the report] simply states, 'Ms. Haimur submitted to me 235 pages of completed Personal Property Inventory Loss Forms . . . Adding in for Mississippi Sales Tax 7%, these inventories total $214,828.92 at replacement cost.'" Docket No. 97 at 5 (quoting Docket No. 98-6 at 5). In their response, the plaintiffs clarify that "Mr. Dyess will not be offering expert testimony at trial as to damages for personal property" and therefore contend that "[t]his issue is moot." Docket No. 106 at 19. The Court agrees with the plaintiffs on this point. It will also defer ruling on whether, as the plaintiffs submit, "Mr. Dyess can testify as a lay witness as to his personal observations as to the contents present in the home when he visited the dwelling" or related matters, as such issues are properly reserved for trial.

when assessing the measure of Additional Living Expenses ("ALE") and debris removal elements of the Haimurs' claim, and thus, conclude that Dyess' "legal opinions are just wrong and will undoubtedly mislead the trier of fact." *Id.* at 4.

None of these arguments is persuasive.

First, Dyess' qualifications. As the plaintiffs point out, like Dyess, "Allstate's adjusters" based their conclusions "on their personal observation and experience." Docket No. 106 at 8. They further emphasize that this Court has previously found that a witness's expertise as an adjuster qualified him to offer expert testimony in an insurance coverage dispute involving alleged fire loss. *Id.* at 8-9 (citing *Mahli, LLC v. Admiral Ins. Co.*, No. 1:14cv175-KS-MTP, 2015 WL 4915701, at *6 (S.D. Miss. Aug. 18, 2015)). Indeed, in *Mahli*, the Court found that the witness's "qualifications and experiences as an adjuster . . . enable him to provide expert testimony regarding common components of a property loss claim, such as depreciation and debris removal." 2015 WL 4915701, at *6. Dyess' nearly 17 years of experience as a licensed public adjuster therefore qualify him to offer expert testimony on the Haimurs' insurance claims.

Onto the foundation of Dyess' opinion. In his report submitted on June 2, 2021, Dyess professes that prior to forming his opinion, he reviewed "[d]ocuments produced by Allstate, including all insurance declarations, insurance policies, estimates, photos, correspondence, adjuster's notes & payment history;" "the Tchula Fire Department report provided by counsel;" and "[a]ll documents produced by Plaintiff, including 235 pages of contents/ personal property inventories and miscellaneous receipts for food and additional living expenses." Docket No. 98-6 at 2. Dyess further states that he "met with Mrs. Easter Haimur on site at the loss location . . . on/or about October 16, 2020." *Id.* During this inspection, Dyess submits that he "found the property to be reticent of a recent fire that was most obviously a 'constructive total loss.'" *Id.* Following his

inspection of the Haimurs' residence, Dyess reportedly "canvassed real estate brokers in the Madison Mississippi area" to identify potential rental properties comparable to the Haimurs' damaged residence. *Id.* at 6. Based on these materials, Dyess compiled a detailed, itemized list of the Haimurs' losses. *See id.* at 13-55.

The Fifth Circuit has emphasized that "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987) (internal citation omitted); *see also Julius v. Luxury Inn & Suites, LLC*, 535 F.Supp.3d 600, 605 (S.D. Miss. 2021) (explaining that much of defendant's arguments challenging the expert's testimony "resembles arguments appropriate for cross-examination, where it belongs so that the jury can play its proper role in the adversarial system."). It is true that "[i]n some case . . . the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion." *Id.* This latter scenario is not the case here. As enumerated briefly above, a review of this case's record indicates that the sources on which Dyess relied distinguish his opinion from one that "lacks the foundation and reliability necessary to support expert testimony." *Id.* at 424. Indeed, the record therefore demonstrates that Dyess based his opinions in this case on a variety of relevant sources. As such, the Court declines to exclude his testimony. Allstate may instead attack Dyess' credibility and the weaknesses of his methodology at trial. *See Jones v. NL Indus.*, No. 4:03CV229-M-B, 2006 WL 5157750, at *3 (N.D. Miss. May 24, 2006).

**IV.    Conclusion**

Allstate's motion to exclude [Docket No. 96] is denied. Here, as is implicitly true for each

of this Court's Orders, "[t]hose [arguments] not specifically addressed would not have changed

the outcome." *Brown v. Ford Motor Co.*, 121 F.Supp.3d 606, 617 (S.D. Miss. 2015).

**SO ORDERED**, this the 3rd day of June, 2022.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE